**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT ASHLAND**

**CIVIL ACTION NO. 11-10-DLB**

**COACH INC., et al**                                                                                              **PLAINTIFFS**


vs.                           **MEMORANDUM OPINION AND ORDER**


**HAYES & COMPANY LLC**, et al                                                               **DEFENDANTS**

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiffs Coach, Inc. and Coach Services, Inc. commenced this trademark and copyright infringement action against Defendants Hayes & Company, LLC, Hayes Clothing, Sandra Seagraves and David Hayes, after Plaintiffs' investigator discovered that a retail location known as Hayes Clothing was selling allegedly counterfeit Coach products. Plaintiffs allege that the products bore multiple materials that are copyrighted by, or are trademarks and trade dresses, of Coach. Plaintiffs also allege that the products were designed, advertised, and sold in violation of various provisions of the Lanham Act (15 U.S.C. § 1051, *et seq*), the Copyright Act (17 U.S.C. § 101, *et seq*), and Kentucky statutory and common law. (Doc. # 8).

This matter is before the Court on Plaintiffs' Motion for Judgment on Defendant Seagraves' Counterclaim (Doc. # 36), which argues that Plaintiffs are entitled to Judgment as a matter of law pursuant to Federal Rule of Civil Procedure 12© because Seagraves' counterclaim fails to state a cognizable claim. Seagraves filed a pro se response (Doc. #

1

47), and the matter was submitted for review. For the following reasons, Plaintiffs' Motion for Judgment on Defendant Seagraves' Counterclaim is **granted**.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs Coach, Inc. and Coach Services, Inc. (hereinafter collectively referred to as "Coach") manufacture and distribute leather and mixed material products, including handbags, wallets and accessories. As the complaint details at great length, Coach is currently the owner of several United States Federal Trademark Registrations and trade dresses, and has numerous valid copyrights registered with the United States Copyright Office (hereinafter collectively referred to as "Coach Marks). Coach has used these Coach Marks for many years in the advertisement and sale of its products, which has allowed the company to develop products that are widely recognized by consumers and the public for their quality.

On December 8, 2010, a Coach investigator discovered allegedly counterfeit Coach products for sale at Hayes Clothing in Grayson, Kentucky. The investigator purchased a handbag bearing Coach Marks for $50.00, far below the $298.00 retail value for a comparable Coach product. Upon further investigation, Coach alleges that it determined the product to be counterfeit based on the following information: (1) the Defendants are not and have never been authorized Coach retailers or manufacturers; (2) the hardware on the handbag was not the kind used by Coach; (3) the stitching on the handbag was not representative of Coach craftsmanship; (4) the lining in the handbag was not used in the production of Coach products; (5) Coach does not design the style of handbag sold by Defendants; (6) the leather Coach "story patch" on the interior of the bag was incorrect in style and content; (7) the overall quality and craftsmanship of the handbag was not

representative of Coach products; (8) and the price was far below the retail value of comparable handbags.

After discovering the allegedly counterfeit Coach products at Defendants' store, Coach filed its initial Complaint on January 27, 2011. (Doc. # 1). In an Amended Complaint filed on February 15, 2011, Coach brings the following claims: (1) Trademark Counterfeiting in violation of 15 U.S.C. § 1114; (2) Trademark Infringement in violation of 15 U.S.C. § 1114; (3) Trade Dress Infringement in violation of 15 U.S.C. § 1125(a); (4) Copyright Infringement in violation of 17 U.S.C. § 501; (5) False Designation of Origin and False Advertising in violation of 15 U.S.C. § 1125(a); (6) Trademark Dilution in violation of 15 U.S.C. § 1125©; (7) Kentucky Trademark Infringement; (8) Kentucky Common Law Unfair Trade Violations; (9) Unjust Enrichment; and (10) Contributory Trademark Infringement. (Doc. # 8).

Defendant Sandra Seagraves filed a pro se answer, styled as a "Response to Complaint," on July 29, 2011 (Doc. # 29). In her answer, Seagraves denies all material factual allegations contained in Plaintiffs' Complaint. Seagraves' answer also contains a "Closing Statement" that, *inter alia*, alleges that "COACH Inc. wanted the publicity of a law suit rather than the correction of an alleged problem with trademark infringement. Therefore their mishandling and bully tactics of a big corporation leaves their hand soiled in this case." (*Id.*). Additionally, the answer contains a "Counter Claim," which states:

> Defendant, is on a fixed income with health issues that can be and have been aggravated as a result of the outrageous and aggressive nature of this court action. Defendant asks the court to dismiss Plaintiff's complaint and award Defendant's damages to be determined by a fair-minded, impartial jury of her peers.

(*Id.*).

3

On November 29, 2011, Coach filed a Motion for Judgment on Defendant Seagraves' Counterclaim pursuant to Rule 12(c), wherein Coach asks the Court to enter Judgment in its favor because the Counterclaim fails to state a cognizable claim. (Doc. # 36). Seagraves filed a pro se response to the Motion on February 10, 2012, which she styled as "Defendant's Justification for Filing of Counter-Claim." (Doc. # 47). Without responding to the arguments presented in Coach's motion, Seagraves supports her assertion that she "deserve[s] the right to counter-claim" by recounting many of the factual allegations presented in her answer, and also claiming that "Coach Inc, has violated the doctrine of 'Latches' (sic)." (*Id.*).

## II.  ANALYSIS

### A.  Standard of Review

A motion for judgment on the pleadings pursuant Rule 12(c) is subject to the same standard of review as a motion to dismiss under Rule 12(b)(6). *Warrior Sports, Inc. v. National Collegiate Athletic Ass'n*, 623 F.3d 281, 284 (6th Cir. 2010). The complaint must contain "either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory." *Weiner v. Klais & Co.*, 108 F.3d 86, 88 (6th Cir. 1997). In addition, the factual allegations, accepted as true, must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"A claim has plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Thus, "where a complaint pleads facts that are merely consistent with a defendant's

liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotations omitted). "If the 'complaint does not contain any factual allegations sufficient to plausibly suggest' each essential element of the averred violation, it does not contain enough 'factual content to nudge [the claim] across the line from conceivable to plausible' and must be dismissed." *Green v. Nicholas Cnty. Sch. Dist.*, 756 F. Supp. 2d 828, 831 (E.D. Ky. 2010) (quoting *Iqbal*, 129 S.Ct. at 1953). Likewise, legal conclusions or unwarranted factual inferences need not be accepted as true when determining whether the claimant is plausibly entitled to relief. *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581-82 (6th Cir. 2007).

Additionally, because the counterclaim was drafted by a pro se party, it shall be "held to less stringent pleadings standards than formal pleadings drafted by lawyers." *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991). Therefore, the counterclaim will be "liberally construed in determining whether it fails to state a claim upon which relief could be granted." *Id.*

### B. Defendant Seagraves' Counterclaim Fails to State a Legally Viable Claim

Under the heading "Counter Claim," Seagraves alleges:

> [She], is on a fixed income with health issues that can be and have been aggravated as a result of the outrageous and aggressive nature of this court action. Defendant asks the court to dismiss Plaintiff's complaint and award [her] damages to be determined by a fair-minded, impartial jury of her peers.

(Doc. # 29 at 7). Simply put, this "Counter Claim" fails to state a legally viable theory upon which relief may be granted.

#### 1. Intentional Infliction of Emotional Distress

Seagraves alleges that Coach's "outrageous and aggressive nature of this court

action" aggravated her preexisting health issues." (*Id.*) Even if this were construed as a claim of intentional infliction of emotional distress ("IIED"), Seagraves has failed to plead a sufficient factual basis for that claim to withstand Plaintiffs' motion for judgment on the pleadings. Kentucky has adopted the *Restatement (Second) of Torts* § 46's definition of IIED, and further defined the tort as containing the following four elements:

1) the wrongdoer's conduct must be intentional or reckless;

2) the conduct must be outrageous and intolerable in that it offends against the generally accepted standards of decency and morality;

3) there must be a casual connection between the wrongdoer's conduct and the emotional distress; and

4) the emotional distress must be severe.

*Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 788 (Ky. 2004) (citing *Craft v. Rice*, 671 S.W.2d 247, 251 (Ky. 1984)).

To prove the "outrageous" element, the Kentucky Supreme Court has held that conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* Even if the conduct is deemed "outrageous," comment g to Section 46 explains that conduct is privileged and "the actor is never liable, for example, where he has done no more than to insist upon his legal rights in a permissible way, even though he is well aware that such insistence is certain to cause emotional distress." RESTATEMENT (SECOND) OF TORTS § 46 cmt. g (1965); *See also Hayes v. Bakery Confectionary & Tobacco Workers Intern. Union of America, Loc. 213 of Cincinnati, Ohio*, 753 F. Supp. 209, 215 (W.D. Ky. 1989) (applying Rst. § 46 cmt. g to a claim of IIED under

Kentucky law).

In this case, Coach has done nothing more than bring suit to enforce its copyright and trademark rights. This conduct unquestionably fails to rise to the level of outrageousness contemplated by the tort of IIED. Coach is doing nothing more than attempting to enforce their rights in a legally permissible way. Therefore, to the extent that Seagraves is bringing a claim for intentional infliction of emotional distress, Coach is entitled to judgment as a matter of law.

### 2. Wrongful Use of Civil Proceeding

Because Seagraves is proceeding pro se, the Court will also liberally construe the language under the heading "Closing Statement," to allege that Plaintiffs are liable for a wrongful use of civil proceeding. Specifically, Seagraves alleges: "It Appears that COACH Inc. wanted the publicity of a law suit rather than the correction of an alleged problem with trademark infringement. Therefore their mishandling and bully tactics of a big corporation leaves their hand soiled in this case." (Doc. # 29, at p. 6). Even if this statement met the requirements of Federal Rule of Civil Procedure 8(a)(2) by giving a short and plain statement of the claim showing that the pleader is entitled to relief, which it does not, the statement fails to allege a sufficient factual basis to support the claim.

Kentucky law recognizes the tort of wrongful use of civil proceedings, but the Kentucky Supreme Court has stated that "public policy requires that all persons be able to freely resort to the courts for redress of a wrong." *Prewitt v. Sexton*, 777 S.W.2d 891, 895 (Ky. 1989) (quoting *Raine v. Drasin*, 621 S.W.2d 895, 899 (Ky. 1981)). For that reason, the pleader must "strictly comply with the prerequisites of maintaining an action for wrongful use of civil proceeding." *D'Angelo v. Mussler*, 290 S.W.3d 75, 79 (Ky. App. 2009). The

elements of the cause of action are: (1) the institution or continuation of original judicial proceeding, either civil or criminal, or of administrative or disciplinary proceedings, (2) by, or at the instance, of the plaintiff, (3) the termination of such proceedings in defendant's favor, (4) malice in the institution of such proceedings, (5) want or lack of probable cause for the proceeding, and (6) the suffering of damage as a result of the proceeding. *Id.* Here, Seagraves has failed to allege any facts that would support the third element – the termination of such proceedings in her favor. This tort is brought *after* a previous suit has terminated in the defendant's favor, which Seagraves has simply not alleged. *See id.* Therefore, Seagraves has failed to allege a viable claim for wrongful use of a civil proceeding.

### 3.   Abuse of Process

Seagraves' allegation that "[i]t appears that COACH Inc. wanted the publicity of a law suit rather than the correction of an alleged problem with trademark infringement," could also be construed as a claim for abuse of process. The tort of abuse of process "differs from malicious prosecution in that malicious prosecution consists of commencing an action or causing process to issue maliciously or without justification. Abuse of process, however, consists of 'the employment of legal process for some other purpose than that which it was intended by the law to effect." *Simpson v Laytart*, 962 S.W.2d 392, 394 (Ky. 1998) (quoting *Raine*, 621 S.W.2d at 902). However, Seagraves has failed to allege sufficient facts to support this tort as well.

A prima facie case of abuse of process has two elements: (1) an ulterior purpose and (2) a willful act in the use of the process not proper in the regular conduct of the proceeding. *Id.* The ulterior purpose must be the primary purpose of bringing the lawsuit,

and it "usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself . . . There is, in other words, a form of extortion . . . which constitutes the tort." *Sprint Communications Co., L.P. v. Leggett*, 307 S.W.3d 109, 113 (Ky. 2010) (quoting *Flynn v. Songer*, 399 S.W.2d 491 (Ky. 1966)). Additionally, the alleged wrongdoer must have done some definite act or made some threat aside from carrying out the process to its authorized conclusion. *Simpson*, 962 S.W.2d at 394.

Seagraves has arguably alleged that Coach brought this suit only for the purpose of attaining publicity. Even if that were sufficient to prove an ulterior purpose, Seagraves has failed to allege that Coach has acted or made a threat that is not authorized by this proceeding. Simply put, Seagraves has not alleged that Coach has done anything other than file a lawsuit, albeit for ulterior purposes. This allegation is factually insufficient to support the tort of abuse of process. *See Simpson*, 962 S.W.2d at 394 (holding that the defendant must do something more than carry out the legal process to its authorized conclusion in order to be liable for abuse of process). Therefore, to the extent that Seagraves is alleging that Coach is liable for abuse of process, she has failed to state a claim upon which relief may be granted.

### 4. Laches

In Seagraves' response, she alleges that she "deserve[s] the right to counter-claim" in part because "Coach Inc, has violated the doctrine of 'Latches' (sic) by allowing something they perceive as being illegal to take place and filing a high profile case . . . ." Contrary to Seagraves' assertion, the doctrine of laches does not support the viability of her counterclaim. Instead, laches is an affirmative defense, *See* FED. R. CIV. P. 8(c)(1), which, if proven, may defeat claims raised in Plaintiffs' complaint even if the complaint is factually

true. *Sterten v. Option One Mortg. Corp.*, 479 F. Supp. 2d 479, 483 (E.D. Pa. 2007) (citing JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 8.07[1] (3d ed. 2006)).

Moreover, Seagraves has failed to properly plead laches as an affirmative defense. It is not sufficient to assert laches as an affirmative defense in a response to a motion. Instead, Federal Rule of Civil Procedure 8(c)(1) required Seagraves to assert laches in her first responsive pleading, which she failed to do. Ultimately, laches does not support any potential counterclaim raised in Seagraves' Answer, nor has it been sufficiently plead as an affirmative defense.

### III. CONCLUSION

Therefore, for the reasons set forth above, Defendant Seagraves' counterclaim fails to state a claim for which relief may be granted.

Accordingly, **IT IS ORDERED** as follows:

(1) Plaintiffs Motion for Judgment on Defendant Seagraves' Counterclaim (Doc. # 36) be, and is hereby, **GRANTED**; and

(2) Defendant Seagraves' Counterclaim is hereby **DISMISSED WITH PREJUDICE**.

This 10th day of April, 2012.



Signed By:
David L. Bunning
United States District Judge

G:\DATA\Opinions\Ashland\0-11-10 MOO Granting Mtn for Judgment on Pleadings.wpd